of America, 23-1165 and 23-7960, Robert Carroll v. United States of America. Good morning, Mr. Carroll. Good morning. As you may have seen, there's a little black switch on the right side of the lectern, so feel free to raise or lower that however you find most convenient. And then as you've probably seen from today, what we'll do is I understand you'd like to reserve two minutes for rebuttal, so you'll make argument for three minutes, then we'll hear from your adversary, and then you'll come back and you'll have two minutes to respond if there's anything that the other lawyer said that you think warrants a rebuttal, we're happy to hear you, okay? So whenever you're ready, feel free to bring your bottle of water up to the lectern, whatever makes you most comfortable. This case involves malpractice in the VA Hospital Federal Tort Claims Act. In 2014, I started to realize that the VA in Albany was not considering the lower spine, they were blaming all my symptoms on the cervical spine, which was a case from 1992 through 1998 where the VA in a different VA hospital ignored the symptoms and said I had multiple sclerosis, but I had two herniated discs. So when the Albany started to take care of me, they always consider all my symptoms to be related to the cervical spine. I did everything I could to get Dr. Thomas Sulu to look at my lumbar spine, and in an accident I fell moving things, and I hit my face, and they did a CAT scan to make sure my neck was okay. But I said to the doctor in the Kingston Emergency Room, I said, could you look at the lumbar spine? So he looked at a simple x-ray, and he said you need to go to a neurologist. So I went back to the VA, and I said to them, you know, I'd like you to take a better look at my lumbar spine. So they brought me in, and I thought they were going to do electro EMG and nerve conduction studies on my legs, and they didn't. They repeated the ones in the arms as a teaching procedure, and when I fell, and I wasn't getting any care from the VA in Albany, I went to a place in Kingston outside of the VA system, and they did an MRI of my lumbar spine, and they found that it had some problems, quite a few problems, and a possible right-sided cyst that could have caused symptoms. I went back to the VA, and even though that MRI of the lumbar spine showed the bottom of the thoracic spine had a lot of problems, the VA never did anything, and I asked different residents that I was seen by every three months or so, and they said, yeah, well, let's do this first. Let's do that first. Finally, in 2019, they did a study on my thoracic spine, and they found I had quite a few problems. The doctor in charge minimized the radiologist report and put in the record that I was not to be given any more appointments. They wanted me to be seen by a general practitioner in the VA system in my town. So this went on and on, and they sent me to, once they found out that I had a problem in my lumbar, they sent me to Syracuse, and they don't have an orthopedic, I mean, a neurological surgeon in Albany, so they sent me to Syracuse, and they don't have one there either, but they had an orthopedic surgeon that said, well, I can do a laminectomy, we'll take the bone out, we'll relieve the pressure, or you can go with physical therapy and needles. They put steroid and analgesic. I went back to Albany, they never gave me the needles, and the doctor in Syracuse said it would be reasonable to operate and take out part of my spine. So they sent me to pain management, and he was the one that was supposed to do the injections with the painkiller. He never did them, and he started saying, you know, it could be sacroiliitis. So he did special x-rays. I'm just going to jump in, Mr. Carroll, just so you know, your red light's on. If you would like to take one more minute, just a little extra, because we do want to make sure we hear from the other side. Take one more minute, and then when it hits the two-minute mark, we'll ask you to sit down, but we'll hear you again. One more minute right now. So this went on, and they sent me there to pain management, and he started to study my sacroiliac, said, no, that's okay, and then he looked at my hip, my bursa, the bursa of my hip. That's okay. So they kept sending me round and round, and they never really did anything. So when I put in the standard form in 2014, I didn't file a complaint, and that's the problem. They said that you needed to file a complaint within so much time, and I said, well, it's continuing treatment and continuing violations. Every time they see me, they do something wrong, and to tell you the truth, none of that that they did was the pain. The pain was caused by a cyst that I didn't know until 2020 was operated on in 2021, and my pain subsided 90%. So I was, I'm claiming that the doctrine of continuing treatment and continuing violations should total this, because in 2000- I think we have that argument. We're going to hear from you again. Okay. Why don't we hear from the other side? Sure. Okay. And then if you think that there's any follow-up that would be helpful, you'll have a chance to come back. Okay. So why don't we hear from Attorney Lesperance? Good morning. May it please the Court. Karen Folster-Lesperance, Assistant United States Attorney for the Northern District of New York for the United States in this case. Mr. Carroll has what he describes as a degenerative spinal condition. His deposition testimony, he said, is essentially an arthritic condition. Unfortunately, it has gotten worse over time. As he just acknowledged in argument, this dates back 30 years to when he started having issues in his cervical spine. His allegations in this case are essentially that over time, that worsens to involve first the lumbar spine and then the thoracic spine. Now, the district court essentially divided that into two separate injuries in order to deal with the timeliness claim. But it is essentially a worsening condition, a worsening of a condition that he has had for 30 years to involve slowly more and more of his spine. The problem with his case and why the district court's decision to grant summary judgment should be affirmed is that he has not identified an actual injury, provided evidence that there was a deviation from the standard of care, or provided any evidence that the deviation approximately caused an injury. His allegations are essentially that the symptoms that he was experiencing were continually attributed to this cervical spinal condition that he has had for 30 years without doing further diagnostic studies to see that it had, to appreciate that it was now involving other areas of his spine. But he does not, he was specifically asked at deposition, was not able to identify any specific treatment that could have been offered to him had that MRI been done earlier to say that yes, this condition has now spread to other areas of your spine. What could have been done, what should have been done earlier? There's no evidence of that. There's no expert testimony of that. And there's no injury that he has alleged. I asked him again in his deposition what symptoms, what pain did you have that could have been alleviated by an earlier diagnosis, and he was unable to identify such an injury. For those reasons and for all of the reasons in our brief, we respectfully ask the district court decision be affirmed. Very good. Thank you. To Mr. Carroll, you have an additional two minutes. None of that is relevant. This is not a trial. I'm here because they dismissed the case. Hey, can I just ask, I'm sorry, can I just ask the court and deputy, why don't we put two minutes on the clock? Yeah, there we go. Okay, please. I'm here because they dismissed the lumbar case that I filed in 2014 because I didn't file a complaint. So what I'm asking is to toll that while I'm giving them a chance to cure me. And every time I turn around, another doctor is telling me this, another doctor is telling  They're not curing me. They're violating, they're continuing to violate. And the second part was in the 2019 standard form, I claimed the thoracic spine. However, the district court knows I'm proceeding in form of pauperous. I can't afford an expert. So when I found the McDermott versus Manhattan Eye Clinic, I used that case. And the district judge said that he doesn't know of any case where McDermott can be used to extend the complaint beyond the number of years that I had. Because I was trying to merge them two together, the thoracic and the lumbar. And they said that McDermott, you know, it's never been in federal court, mostly in New York State. But Marone versus the United States, I believe, cites this McDermott versus Manhattan Eye Clinic. It was seen in this court in 1966. Every time they tell me that they can't use McDermott, I'm saying, well, why not? They said, well, you could have put an affidavit in asking for more time. Well, I don't want more time because I don't have the money for an expert. I want to use my McDermott. I wanted to use the defendant doctors because treating doctors have more value than an expert that you hire. That's another reason why. And if I file the affidavit for more time, I'm basically saying, okay, I give up. I'm not going to use McDermott. Give me more time. I'll get some money. I'll use my credit card, whatever. That one's not the case. So this appeal basically is not about the medical issues. It's about whether or not they continue to violate me. Well, we appreciate your argument. Thank you very much for coming in today, Mr. Carroll. As with all the cases that we heard today, all the ones we're going to take it under advisement. And that just means that at some later point in time, there will be written rulings in all the cases that we heard today, including yours. So in the meantime, we thank you both for coming in.